The State v. Hinshaw.

---

No. 19,310.

THE STATE OF KANSAS, *Appellee,* v. THOMAS JUSTIN HINSHAW, *Appellant.*

SYLLABUS BY THE COURT.

1. OBTAINING PROPERTY BY FALSE PRETENSES—*Information— Motion in Arrest of Judgment.* An information charging that the defendant, by signing a check with a false name, aided another to obtain money by means of it, is not subject to a motion in arrest of judgment on the ground that it does not sufficiently connect the defendant with the wrongful act, or on the ground that it does not state explicitly that the person defrauded believed the check to be good, or that he relied upon any representation that it was good. .

2. TRIAL—*No Error in Rulings of Court.* Various trial rulings examined and held not to constitute error.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed July 7, 1914. Affirmed.

*Edward T. Riling, John J. Riling,* both of Lawrence, and *L. D. Moore,* of Winfield, for the appellant.

*J. S. Amick,* county attorney, for the appellee.

The opinion of the court was delivered by

MASON, J.: T. J. Hinshaw appeals from a conviction on a charge of obtaining property by false pretenses.

The information was drawn in two counts. A verdict of guilty was rendered on each, but as he was sentenced only on the second, that alone is here involved. No motion to quash the information was filed, but its sufficiency was challenged by a motion in arrest of judgment. It is contended that the second count fails to state a public offense, even when given the liberal interpretation to which it is entitled when attacked in this manner. The substance of the charge, leaving out superfluous words, is that the defendant did fraudulently aid James D. Henderson to obtain from E. W. Parsons goods and money of the value of thirty-five dollars, by presenting to the said E. W. Parsons a false and bogus check for thirty-five dollars purporting to be drawn by the Auto Supply and Tire Company, per O. M. Nichols, and by buying a ring of the value of twenty dollars from the said E. W. Parsons, and giving him the said false and bogus check for the said ring and by receiving fifteen dollars in money in addition; and that the defendant, with the intent to assist James D. Henderson in cheating and defrauding, wrote the check and signed thereto the name of O. M. Nichols. In other words this count of the information charges that Henderson obtained property from Parsons by means of a false token—a check purporting to have been signed by O. M. Nichols—and that the defendant aided him by signing the

name of Nichols to it.   The statute permits one who aids in the commission of an offense to be charged as if he were a principal.   (Crim. Code, § 115.)   But it is no objection to an information that it sets out the actual facts in this regard.   The information follows substantially the language of the statute defining the offense of obtaining property by a false token.   The following suggestions are thought to meet the various specific objections made to the information: It was not necessary to allege that the check was ever presented for payment to the bank on which it was drawn. The allegation that it was false and bogus—that the defendant signed the name of Nichols to it with a fraudulent purpose—is sufficient to bring it within the statute.   It was not necessary that the information should allege in so· many words that Parsons parted with his property believing that the check was good, . or relying on representations that it was good.   "An allegation that 'by means of the false pretense,' or 'relying on the false pretense,' or the like, is sufficient where it is apparent that the delivery of the property was the natural result of the pretense alleged."   (19 Cyc. 430.)   "It is not necessary to allege specifically that the prosecutor relied on the pretense, if the connection  between the pretense and the obtaining is otherwise sufficiently shown by the indictment.   .   .   .   An averment that defendant obtained the property by means of the false token is sufficient."   (Notes, 19 Cyc. 431.)   The value of the property obtained having been stated as thirty-five dollars, it was not necessary to add that this value was according to the financial standard of the United States; that was fairly implied. The information stated in substance that the defendant fraudulently signed the check, and conspired with Henderson for the commission of the crime; it was not necessary that any further participation on his part should be alleged.   (12 Cyc. 191.)

64—92 KAN

It is contended that the verdict is not supported by the evidence. The argument made is that the testimony connecting the defendant with the offense is incredible, rather than that there is no evidence tending in that direction. Henderson as a witness for the prosecution admitted his own guilt freely, and stated that the defendant was his accomplice in the affair, writing the check with a knowledge of the use to which it was to be put, and receiving a part of the proceeds of a similar transaction. The state introduced evidence that the check was in the handwriting of the defendant; after considerable testimony had been given on the subject, the defendant admitted the writing. He did not take the stand himself. In view of these considerations, and under all the evidence, we think the question of the defendant's guilty participation in the fraud was one of fact to be determined by the jury.

Henderson was cross-examined as to his arrangements with the defendant for a division of the proceeds of this and other similar checks. He said in effect that there was no express agreement on the subject; that he naturally presumed the defendant wanted something out of it. He said: "I tried to settle with him as soon as possible; he was to have part of it, and I gave it to him as soon as possible after I got it." He was asked: "Were you to divide it equally, each a half?" He answered: "No, I was to divide it; I was at more expense than he was." Later the defendant's attorney sought to renew the cross-examination on this subject, and asked what the understanding was as to what the defendant was to get out of the transaction. This was objected to as repetition. The trial judge in sustaining the objection remarked: "He said in substance that he was taking the risk and doing the work, and he allowed the defendant a part of the money." The remark is objected to as invading the province of the jury by drawing an inference from the testimony. From what has already been stated we think it clear

that no prejudice could have resulted. The defense attempted to show that Henderson had paid one of the checks to the holder. The evidence was ruled out on the ground that as Henderson admitted his guilt it was immaterial. We think the ruling was correct.

The defendant's father was called as a witness in his behalf. He testified in effect that he furnished his son all the money he required—that his son was allowed to check on his account whenever he wanted money. In cross-examination he was asked, over the defendant's objection, a number of questions as to his son's career, having a tendency to suggest wrongdoing in other respects. It is urged that material error was thereby committed. In every instance, however, the witness returned such answers as to exculpate the defendant from the suggested charge, so that no injury could have resulted to him.

In the course of the trial a delay was asked in behalf of the defendant in case a witness did not arrive when expected. The judge said: "We are not going to do any more waiting in this case, gentlemen. We spent all yesterday afternoon on the question of handwriting and comparisons, and now it is admitted that the young man wrote these checks." The contention is made that this remark tended to create a prejudice in the minds of the jury against the defendant. It perhaps amounted to a suggestion that the time of the court had been needlessly taken up, but we can not regard it as seriously prejudicial.

The judgment is affirmed.