PEOPLE *v*. SMITH.

1. CRIMINAL LAW—AIDING AND ABETTING—INDICTMENT AND INFORMATION.

Ordinarily, one who aids and abets another in the commission of an offense is an accessory and by the statute is now a principal and may be charged as such (3 Comp. Laws 1929, § 17253).

2. SAME—ACCESSORY—PRINCIPAL—INDICTMENT AND INFORMATION.

It is at the option of the pleader whether, when the accessory before the fact is by statute made a principal, he is charged as doing the thing directly or through the principal (3 Comp. Laws 1929, § 17253).

3. SAME—PRINCIPAL—ACCESSORIES.

Since enactment of statutes abrogating common-law distinction between principals and accessories, latter may be prosecuted without regard to conviction or acquittal of one who, under the common law, would have been called the principal (3 Comp. Laws 1929, § 17253).

4. INDICTMENT AND INFORMATION—FALSE PRETENSES—PRINCIPAL—ACCESSORY.

Information which fully and particularly charged that principal had obtained money and property by false pretenses and set up facts and circumstances surrounding commission of the offense and charged defendant with aiding and abetting such offense by knowingly furnishing worthless certificates of stock *held*, sufficient, since the effect is the commendable one of apprising defendant more clearly than is required by statute of what he must defend against (3 Comp. Laws 1929, § 17253).

5. FALSE PRETENSES—EVIDENCE—QUESTION FOR JURY.

In prosecution of one charged with aiding and abetting commission of offense of obtaining money and property by false pretenses, evidence *held*, sufficient to present case for consideration of jury and, therefore, does not entitle defendant to directed verdict of not guilty.

6. SAME—INTENT.

Intent is a necessary element of the offense of obtaining money or property by false pretenses.

7. SAME—AIDING AND ABETTING—FALSE PRETENSES.

One charged with aiding and abetting the commission of offense of obtaining money or property by false pretenses is, as a matter of law, charged as a principal, and upon conviction is to be punished as principal.

8. SAME—EVIDENCE—OTHER OFFENSES—INTENT—INSTRUCTIONS.

In prosecution of one charged with aiding and abetting another in obtaining money and property by false pretenses, admission of testimony of other like offenses and instruction that use of such evidence was limited to proving intent and could not be used as substantive evidence of offense charged *held*, proper (3 Comp. Laws 1929, § 17320).

9. SAME—INTENT—OTHER OFFENSES—EVIDENCE—STATUTES.

Information charging that defendant aided and abetted another in obtaining money and property by false pretenses set forth an offense in which intent was a necessary ingredient and upon trial testimony of other like acts which tended to prove intent is *held*, admissible under 3 Comp. Laws 1929, § 17320.

10. SAME—EVIDENCE—ARGUMENT OF PROSECUTOR.

In prosecution of one charged with aiding and abetting another to obtain money and property by false pretenses through sale of worthless certificates of stock in corporation represented as a pipe line operator, admission of lease between defendant and lessor of some used pipe and from which it was apparent that the lessee's interest was of little or no value, and comment upon it by prosecutor in his argument *held*, proper in connection with alleged representation as to value of stock of corporation represented as owning pipe line.

11. SAME—CONSPIRACY—INSTRUCTIONS.

In prosecution of one charged with aiding and abetting another in obtaining money and property by false pretenses, court's instruction in effect that defendant was charged with a conspiracy in committing crime for which other accused had been convicted *held*, not error, where although it was unnecessary to allege a conspiracy, there was testimony that defendant and his principal were acting in concert to accomplish a common design.

12. SAME—EVIDENCE—ACTION IN CONCERT.
  So long as defendant and his principal were acting together, evidence of their conversations and acts in furtherance of project of obtaining property and securities of others by false pretenses, by trading them out of valuable securities through use of worthless stock, was admissible.

13. TRIAL—OTHER OFFENSES—INSTRUCTION—FALSE PRETENSES.
  Charge of court upon subject of evidence of other offenses by defendant and another acting in concert to accomplish a common design, in prosecution of one charged with aiding and abetting another in obtaining money and property by false pretenses, held, to have limited use of such testimony to purposes for which it was admissible and subject to consideration by jury (3 Comp. Laws 1929, § 17320).

Appeal from Muskegon; Vanderwerp (John), J. Submitted April 11, 1935. (Docket No. 107, Calendar No. 37,973.) Decided May 17, 1935.

Robert D. Smith was convicted of aiding and abetting another in obtaining money and property by false representations and pretenses. Affirmed.

*Frank E. Wetmore* (*Charles B. Cross*, of counsel), for appellant.

*Harry S. Toy*, Attorney General, and *Francis G. Barlow*, Prosecuting Attorney, for the people.

POTTER, C. J. Defendant was arrested, tried and convicted of aiding and abetting one Guy Vanderwest in obtaining money and property by false representations and pretenses, and brings the case here by appeal in the nature of a writ of error.

After the original information was filed in the circuit court, motion was made by the people for leave to file an amended information, whereupon defendant objected to the filing of an amended in-

formation for the following reasons and upon the following grounds:

That respondent had never been arrested upon any complaint and warrant charging him with the matters charged in the so-called amended information; had never had any examination on the matters set forth and charged in said amended information; had not waived and did not waive the right to an examination on the matters set forth in the information; the information charged no offense known to the law, is ambiguous, vague, and does not describe, nor state any offense, with sufficient certainty that defendant may prepare for his defense.

This motion was overruled and the people were permitted to file an amended information. Whereupon defendant moved for an order striking from the files both the original and amended information, and to discharge the respondent and quash the cause for the reasons and upon the grounds that the original information was bad for duplicity, charged several distinct charges in one single count; charged no offense known to the laws of the State; the so-called amended information was not based upon any complaint or warrant issued against respondent; he had never had any preliminary examination on the matters charged in the so-called amended information and had never waived such preliminary examination; the so-called amended information was not an amended information, but an original information, not based upon any complaint, warrant or testimony had or taken at any preliminary examination had or held in said cause; and the so-called amended information stated no offense known to the law; which motion was overruled by the trial court and the case came on for hearing before the court and a jury, and defendant upon trial was convicted. Various

errors are assigned which are grouped together by the attorney for defendant in the statement of questions involved.  Defendant contends:

(1) One may not be tried and convicted of aiding and abetting another to commit the crime of obtaining property by false pretenses;

(2) Defendant was entitled to a directed verdict at the close of the people's case;

(3) Aiding and abetting another to commit a felony is not in the class of cases mentioned and provided for by 3 Comp. Laws 1929, § 17320;

(4) Exhibit 11, a contract of lease of pipe was not admissible in evidence and it was error to permit its use by the prosecuting attorney in his argument;

(5) The court erred in his charge to the jury.

1.  Ordinarily, one who aids and abets another in the commission of an offense is an accessory.  The statute in this State, 3 Comp. Laws 1929, § 17253, provides:

"Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

Defendant contends that aiding and abetting was a common-law offense which was partially abrogated by the statute last above quoted, which took the place of and superseded 2 Comp. Laws 1871, § 7934; and that at least since 1871 the offense of aiding and abetting has been abolished.  All this may be admitted.

By the very terms of the statute, 3 Comp. Laws 1929, § 17253, he that aids and abets in the commis-

sion of an offense is now a principal and may be charged as such. This was the rule laid down in *People* v. *Wycoff,* 150 Mich. 449, and is covered by the express terms of the statute.

The information filed against defendant did not charge defendant with being a principal, as it might have done, but it charged him with aiding and abetting the commission of the offense of obtaining property by false pretenses, and set up the facts and circumstances surrounding the commission of the offense.

In *People* v. *Peckens,* 153 N. Y. 576 (47 N. E. 883), a similar question came before the court in connection with the statute simplifying criminal practice and procedure in the State of New York, and it was said:

"The obvious intent of that section was to simplify the form of pleading in such a case, but manifestly it was not intended to prohibit the pleader from alleging the facts. The provision is permissive, not mandatory. * * * The only effect of that provision * * * is to permit the pleader to allege an act as the act of a defendant when he procures it to be performed by another. That the indictment in this case charged all the facts, instead of alleging a conclusion, constituted no sufficient objection to its validity."

In *State* v. *Hinshaw,* 92 Kan. 1007 (142 Pac. 960), it is said:

"The substance of the charge, leaving out the superfluous words, is that the defendant did fraudulently aid James D. Henderson to obtain from E. W. Parsons goods and money of the value of $35, by presenting to the said E. W. Parsons a false and bogus check for $35 purporting to be drawn by the

Auto Supply & Tire Company, per O. M. Nichols, and by buying a ring of the value of $20 from the said E. W. Parsons, and giving him the said false and bogus check for the said ring and by receiving $15 in money in addition; and that the defendant, with the intent to assist James D. Henderson in cheating and defrauding, wrote the check and signed thereto the name of O. M. Nichols. In other words this count of the information charges that Henderson obtained property from Parsons by means of a false token—a check purporting to have been signed by O. M. Nichols—and that the defendant aided him by signing the name of Nichols to it. The statute permits one who aids in the commission of an offense to be charged as if he were a principal. But it is no objection to an information that it sets out the actual facts in this regard.''

As pointed out in *Territory* v. *Guthrie*, 2 Idaho, 432 (17 Pac. 39):

''It is true the statute makes an accessory before the fact a principal, and it is wholly unnecessary to charge the accused in any other form than as principal; but, if the grand jury does charge one who is in fact an accessory before the fact as such, the effect is simply to inform him more clearly of what he must defend against, and therefore it is not a defect of which he can be heard to complain.''

In *State* v. *Ostman*, 147 Mo. App. 422, 430 (126 S. W. 961), the court pointed out that it was entirely proper under the statutes to charge those who aided and abetted in the commission of an offense as principals, and thus conform to the conclusion of the law on the facts, or ''it may allege the matter according to the fact, as was done in this case; that is to say, it may allege the offense against the principal actor as principal and the others as aiders and

abettors all in the same count. It is immaterial how the charge may be made, the law regards them all as principals.''`

In *State* v. *Briggs,* 84 Minn. 357, 360 (87 N. W. 935), it is said:

"Where a party does not personally commit a crime, but procures it to be committed by another, the indictment may charge him directly with the commission of the offense, as if he personally committed it, or it may directly charge him as a principal by stating the facts which at common law would make him an accessory before the fact."

In *State* v. *Gleim,* 17 Mont. 17, 23 (41 Pac. 998, 31 L. R. A. 294, 52 Am. St. Rep. 655), it is said:

"It is plain that the old distinctions between accessories before the fact and principals are abolished by these statutes; but we see no objection to the form of an information charging a person as an accessory rather than as a principal. To so charge is to the advantage of a defendant, because it notifies him of the attitude which the State will assume when the case is brought to trial, by setting out the facts constituting the offense with greater certainty than is requisite where an accessory is indicted as a principal."

In *Di Preta* v. *United States* (C. C. A.), 270 Fed. 73, it is said:

"At common law Di Preta would have been an accessory before the fact; but the penal code makes him a principal. Thus the acts of the principal become the acts of the accessory or aider, and such accessory may be charged as having done the act himself, and be indicted and punished accordingly. * * * It is at the option of the pleader whether, when the accessory before the fact is by statute made a principal, he be charged as doing the thing directly

or through the principal. * * * And generally where the distinction between principals and accessories before the fact has been abolished, such accessory may be indicted as if he were a principal, without setting out the facts by which he aided and abetted or advised and procured the commission of the crime.''

Before the enactment of the statute, the conviction of the principal was essential to the prosecution of the accessory. Now all are principals, and the guilt of one does not depend upon the guilt of the other. The effect of our statute is to permit the prosecution of one who aids and abets, without regard to the conviction or acquittal of one who, under the common law, would have been called the principal. That is what the statute intended to accomplish in abrogating the common-law rule. One who aids and abets may be charged and convicted as a principal. *People* v. *Mangiapane,* 219 Mich. 62.

In the case at bar defendant was not injured by the particularity with which the offense was set forth in the amended information. It charged fully and particularly that one Guy Vanderwest had obtained money and property by false representations and pretenses, the manner in which he obtained them, and the means used; and it charged the defendant with aiding and abetting said Guy Vanderwest and, knowing the representations of said Guy Vanderwest to be false, that defendant furnished certificates of stock in the Great Western Construction Company for delivery by Guy Vanderwest to Howard M. Rouse and Mary Rouse, and signed said certificates as president of the Great Western Construction Company, greatly to the damage of Howard M. Rouse and Mary Rouse and contrary to the form of the statute. And in the charging part of

the information, it charged the defendant with counseling, procuring, aiding and abetting Guy Vanderwest in obtaining goods and property from Howard M. Rouse and Mary Rouse by false representations and pretenses.

We think the information was good under the statute, that defendant was not injured by the particularity with which the offense was charged; but, on the other hand, we commend the prosecution for setting forth the facts more clearly than is made necessary by the statute which provides that every person concerned in the commission of an offense may be charged as a principal.

2. Defendant contends he was entitled to a directed verdict of not guilty. He sets up considerable testimony, and particularly quotes largely from the testimony of Guy Vanderwest who had been convicted of obtaining money and property under false pretenses and was produced as a witness against defendant. Vanderwest testified defendant Smith told him the Great Western Construction Company was the owner of a large pipe line, but that Smith had never told him the company was receiving 12½ cents a barrel for oil conveyed through the pipe line, or that it was making large profits, or paying large dividends on its capital stock, or that the stock was worth $20 to $30 a share; and that Smith never told Vanderwest to state that he was a securities broker licensed and bonded under the laws of the State of Michigan, nor that the Great Western Construction Company was filed with the securities commission or had obtained permission to sell its stock to the public, nor that a large oil refinery in Michigan and in Texas was seeking to gain control of the Great Western Construction Company, nor did defendant ever repre-

sent to him the shares of stock in the company could be sold at a large profit, nor did he tell him that if Mr. and Mrs. Rouse could secure a block of 400 shares of stock in the company in one certificate, they could sell the stock at $30 a share; and, in general, he denied that defendant gave him any of the information which he conveyed to Rouse and wife in order to obtain the stock and other securities which it is claimed he procured from them.

On the other hand, there was testimony tending to show that defendant told Vanderwest the stock had a declared value of $25 a share and an estimated book value of $30 a share; that it was not necessary to have it approved by the Michigan securities commission. When Mrs. Rouse wrote to check up on the statements which had been made by Vanderwest to her, Smith wrote her a letter which was not sent through the mail but delivered by messenger, in which Smith said:

"It is unfortunate that you cannot and do not rely upon Vanderwest's statements relative to the value of your holdings in our company."

Smith furnished the stock certificates signed by himself as president of the Great Western Construction Company to be delivered by Vanderwest to the Rouses.

Vanderwest had been convicted at the time defendant herein was tried. He said they had been acquainted from May or June, 1932. Yet the witness Geistert testified that March 26th he bought of Smith and Vanderwest 100 shares of Cities Service common.

According to Vanderwest's story, he undertook to sell Smith's personal stock in the company just to help Smith get started, and without any agreement

as to compensation. Later, he testified he was helping Rouse get some stock in the company in order that he might sell it to a man named Christie. In another place, he testified that in making the deal, he was trying to help out a Mr. Walker. He says that five dollars was all Smith ever paid him on the July 15th deal. Yet there seems to be no dispute but that Smith and Vanderwest, operating together from July to September 29th, obtained securities for which they obtained more than $3,000. In each instance, Vanderwest obtained the stock in Muskegon, took it to Grand Rapids to sell, and Smith participated in the sale and disposition of the securities obtained by false representations and pretenses made by the witness Vanderwest, and furnished and signed as president the stock of the Great Western Construction Company that was delivered by Vanderwest to the persons from whom he procured securities, in exchange for such stock.

There was ample testimony to carry the case to the jury, and the defendant was not entitled to a directed verdict of not guilty.

3. Defendant strenuously urges that aiding and abetting another to commit a felony is not in the class of cases mentioned and provided for by 3 Comp. Laws 1929, § 17320, which section is as follows:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or

subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant.''

The trial court permitted testimony tending to establish other offenses similar to that charged in the information, and charged the jury when the case was submitted to them that one of the purposes for which such evidence was admitted was to enable them to determine whether the respondent had the intent to cheat and defraud, or to aid and abet Vanderwest to cheat and defraud Howard and Mary Rouse; but he also charged in this connection the jury should not consider such evidence as proof of respondent's guilt, but strictly limited its use to the question of the respondent's intent.

Defendant was charged with obtaining money and property by false representations and pretenses. Intent is a necessary element of this offense and, under the statute in this State, defendant, though charged in the information with aiding and abetting the commission of the offense, was as a matter of law charged as a principal—that is, charged with obtaining money by false representations and pretenses, and upon conviction was to be punished as a principal—so that intent was a necessary ingredient of the offense, and the court properly charged the jury in effect that the evidence of other offenses was admissible as tending to show the intent of the defendant, but that such testimony could not be used as substantive evidence of the offense charged in the information.

We think the offense charged against the defendant was one falling fairly within the provisions of 3 Comp. Laws 1929, § 17320.

4. The substance of the charge against defendant was that he was president of the Great Western Construction Company; the representations made were in relation to the value of the stock of the Great Western Construction Company which purported to be a corporation organized and existing under the laws of the State of Michigan, with a capital stock of 10,000 shares of no par value. One of the representations claimed to have been made by Vanderwest was as to the ownership by this corporation of a pipe line in the Mt. Pleasant oil field. The certificates of shares of stock issued were in the Great Western Construction Company, pipe line operators. Exhibit 11, which defendant says ought not to have been admitted in evidence and upon which the prosecution ought not to have been permitted to comment, purported to be an agreement between Robert D. Smith, of Muskegon, Michigan, doing business as the Great Western Oil & Gas Company, and G. P. Scharl, of Grand Rapids, wherein it is recited that Smith is engaged in the operation and maintenance of a certain pipe line located at Mt. Pleasant, and is desirous and was desirous of securing additional pipe line equipment to be secured on a rental basis. It provides that Scharl is to rent to Smith approximately 52,810 feet of two-inch pipe line, together with two Worthington pumps and Wakesha engines, including proper connections suitable for the pumping of crude oil. It provides for a maximum rental price per foot, and the payment of rental for the use of the pipe line. This lease also contained what may be termed an option, giving Smith the right to purchase the pipe at a price to be determined as a fair price for used pipe of the same dimensions, and an option was granted to Scharl to accept or reject a 33 1/3 per

cent. interest in the pipe line company in lieu of rental money. Scharl was to haul the pipe line equipment to the Mt. Pleasant field office at his own expense, not to exceed $250. It was apparent from this rental agreement that notwithstanding the claimed and represented value of the stock of the Great Western Construction Company, that Smith, the defendant, had no property interest in the pipe; that he was doing business on a "shoe-string," and the pipe in his pipe line was secondhand or used pipe which he acquired under a lease from Scharl and for which, as a matter of fact, he paid little or nothing.

We think it was not error for the people to introduce this instrument in evidence, nor for the prosecuting attorney in his argument to comment upon it.

5. It is contended the court erred in his charge to the jury because in effect he said the defendant was charged with a conspiracy and with aiding and abetting Vanderwest to obtain by fraud this stock from Mr. Rouse.

The court said to the jury the only question for them to determine was whether defendant was guilty of the offense of obtaining money or property by false representations and pretenses by aiding and abetting Vanderwest in committing a fraud upon the Rouses, or, in other words, conspiring with him to commit the crime that Vanderwest was convicted of, namely, that of obtaining money and property by false representations and pretenses. The testimony introduced of other offenses was limited by the trial court to the purposes of showing the intent of the defendant, and for the purpose of showing a conspiracy existed between the defendant and Vanderwest. All this is said to be error.

It was unnecessary to set up a conspiracy in the information. *People* v. *McGarry*, 136 Mich. 316.

It was certainly competent to show the defendant and Vanderwest were acting in concert to accomplish a common design; that they were conspiring to corruptly obtain by false representations and pretenses the property of Rouse and wife, and others. It was likewise competent to show the defendant and Vanderwest acted together in the sale and disposition of the securities which they thus obtained from the persons claimed to have been defrauded. So long as the defendant and Vanderwest were acting together, evidence of their conversations and acts in furtherance of the project of obtaining the property and securities of others by false representations and pretenses and converting them into cash, by trading them out of valuable securities through the use of worthless stock of the Great Western Construction Company, was admissible.

We think there was no error in the charge of the court upon this subject, but that he properly limited the use of the testimony of other offenses to the purposes for which it was legitimately admissible and subject to consideration by the jury.

Other assignments of error are discussed in the briefs. We do not find any of them merit discussion.

Conviction affirmed.

NELSON SHARPE, NORTH, FEAD, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with POTTER, C. J. WIEST, J., concurred in the result.