PEOPLE v. MATTHEWS.

1. CRIMINAL LAW—PRELIMINARY EXAMINATION—COMPLAINING WITNESS.

In prosecution for felony it is not imperative that the complaining witness be produced at preliminary examination of accused, where other witnesses have been called (3 Comp. Laws 1929, § 17196).

2. SAME — PRELIMINARY EXAMINATION — COMPLAINING WITNESS — PREJUDICIAL ERROR.

Calling complaining witness at preliminary examination after counsel for accused had called prosecutor's attention to fact that such witness had not been produced was not tantamount to accused's being made a witness against himself and was not prejudicial error (3 Comp. Laws 1929, § 17196).

3. SAME—PROBABLE CAUSE—STATUTES.

Preliminary announcement by justice of the peace before whom preliminary examination of one accused of felony was pending that he found there was probable cause to believe the offense charged had been committed and he would bind defendant over

to the circuit court for trial was not a full compliance with statutory requirement that on such an examination it be shown that the offense charged was committed and that there was probable cause to believe it was committed by accused (3 Comp. Laws 1929, § 17205).

4. SAME—PROBABLE CAUSE—RETURN OF EXAMINING MAGISTRATE.

Written return of the justice of the peace, by whom preliminary examination was conducted, that the testimony before him disclosed that the offense charged had been committed and there was probable cause to believe defendant guilty thereof *held*, a proper return and justified by the testimony taken on the examination involved (3 Comp. Laws 1929, § 17205).

5. SAME—PRELIMINARY EXAMINATION—EVIDENCE.

Holding one accused of felony for trial is not error on part of examining magistrate where there is sufficient competent evidence to justify his finding that an offense was committed and there is probable cause to believe accused guilty thereof, notwithstanding improper, irrelevant and immaterial evidence was received (3 Comp. Laws 1929, § 17205).

6. EMBEZZLEMENT—JUSTICE OF THE PEACE—DE FACTO OFFICER.

A justice of the peace who was elected to fill a vacancy and thereafter elected for a period of four years and as justice of the peace received money which he is accused of having knowingly and unlawfully appropriated to his own use may not upon prosecution therefor claim he was not a public officer because he had failed to comply with statute and city charter relative to the filing of oath of office and official bonds, since he was a *de facto* officer and subject to prosecution for malfeasance as public officer (1 Comp. Laws 1929, §§ 996, 1026, 3350; Act No. 328, § 175, Pub. Acts 1931; Hastings City Charter, chap. 5, § 5, chap. 6, § 32).

7. OFFICERS—DE FACTO OFFICERS.

An officer *de facto* is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law.

8. SAME—DE FACTO OFFICERS.

A person is a *de facto* officer when he is in possession, and is exercising the duties, of an office; his incumbency is illegal in some respect; he has at least a fair color of right or title to the office; or has acted as an officer for such a length of time, and under such circumstances of reputation or acqui-

escence by the public and public authorities, as to afford a presumption of appointment or election and induce people, without inquiry, and relying on the supposition that he is the officer he assumes to be, to submit to or invoke his action.

9. EMBEZZLEMENT—CONFLICT OF STATUTE AND CITY CHARTER—ACCOUNTING BY PUBLIC OFFICER OF FINES COLLECTED.

Conflict of provisions of statute and city charter as to which of two officers a justice of the peace in a city should account for fines collected is of no consequence in prosecution of justice of the peace under charter for appropriation of fines collected to his own use and not because he accounted to one officer and not to the other (3 Comp. Laws 1929, § 15178; Act No. 328, § 175, Pub. Acts 1931; Hastings City Charter, chap. 6, § 29).

10. CRIMINAL LAW—EMBEZZLEMENT—INTENT—OTHER OFFENCES—EVIDENCE.

In prosecution for embezzlement of fines collected by defendant, a justice of the peace located in a city, admission of testimony that defendant had failed to account for fines collected on occasions previous to that involved in prosecution, presented for purpose of showing intent and so limited by instructions to jury *held,* proper where offense charged was that defendant had knowingly appropriated the money (3 Comp. Laws 1929, §§ 15178, 17320; Act No. 328, § 175, Pub. Acts 1931).

11. EMBEZZLEMENT—PUBLIC MONEYS—JUSTICE OF THE PEACE—EVIDENCE.

In prosecution of justice of the peace for embezzlement of fines collected, a showing that he retained the public funds for his own use was sufficient, it being unnecessary to show he used the money for private investment or personal expenditure, deposit, or concealment (3 Comp. Laws 1929, § 15178; Act No. 328, § 175, Pub. Acts 1931).

12. SAME—EVIDENCE—PARTIAL RESTITUTION.

In prosecution of justice of the peace for knowingly and unlawfully appropriating to his own use certain fines he had collected, his refusal to designate fines for which he made a remittance about a year after they were collected and just before prosecution was commenced together with evidence of prior unlawful appropriations in excess of amount remitted and testimony of county treasurer his records did not show defendant had turned over specific fines on which the prose-

cuting attorney relied for conviction, *held,* sufficient to sustain conviction notwithstanding partial restitution he made (3 Comp. Laws 1929, § 15178; Act No. 328, § 175, Pub. Acts 1931).

Appeal from Barry; McPeek (Russell R.), J. Submitted April 13, 1939. (Docket No. 103, Calendar No. 40,163.) Decided June 22, 1939.

Andrew A. Matthews was convicted of unlawfully appropriating public money to his own use. Affirmed.

*Laurence E. Barnett,* for defendant.

*Thomas Read,* Attorney General, and *Archie D. McDonald,* Prosecuting Attorney, for the people.

NORTH, J.     Andrew A. Matthews was charged and convicted under section 175 of the Michigan penal code (Act No. 328, Pub. Acts 1931 [Stat. Ann. § 28.372]) with knowingly and unlawfully appropriating to his own use money in excess of $50 received by him in his official capacity as a justice of the peace, such money having been received in payment of fines imposed in cases tried before the justice.     Matthews, tried by the circuit judge without a jury, has appealed.

First he complains that he was wrongfully bound over to the circuit court for trial without having had a proper examination and without having waived examination.     3 Comp. Laws 1929, § 17256 (Stat. Ann. § 28.982).     On being arraigned in the circuit court he stood mute and by motion to quash presented to the circuit judge the alleged errors incident to his examination.     The motion to quash was denied, and we first review this phase of the record.

1.     Examination.     The complaining witness in this prosecution was Glenn Swift.     Upon the examination

before the magistrate the prosecutor called other witnesses, but without calling Swift definitely announced that he had completed the testimony he proposed to offer.   Thereupon defendant's counsel asked that Matthews be dismissed because the prosecuting attorney had not produced the complaining witness for examination.  See 3 Comp. Laws 1929, § 17196 (Stat. Ann. § 28.922).  It was not imperative that the complaining witness should be produced.  *People* v. *Curtis,* 95 Mich. 212.  However, the complaining witness was produced later and his testimony taken.   There is no merit to appellant's contention that by this procedure he was compelled to point out to the prosecuting attorney an essential element of the examination and in effect compelled to assist the prosecution in a manner tantamount to being made a witness against himself.   Calling Swift after defendant's counsel had raised the objection was not prejudicial error.  *People* v. *Blake,* 157 Mich. 533.

While the examination before the justice was pending, he made the announcement that he found there was probable cause to believe the offense charged had been committed and he would bind defendant over to the circuit court for trial.   Obviously this statement of the justice did not constitute full compliance with the statutory requirement that on an examination the prosecutor must show that the offense charged has been committed and that there is probable cause to believe it was committed by the accused.  3 Comp. Laws 1929, § 17205 (Stat. Ann. § 28.931).  But notwithstanding this preliminary announcement of the justice, he subsequently made written return to the circuit court that the testimony before him disclosed the offense charged had been committed and there was probable cause to believe defendant herein was guilty thereof.   This was a proper return and was justified by the testimony taken on the examination;

at least appellant has not demonstrated the contrary. There was no error in this particular, notwithstanding the examining magistrate refused the request of defendant's counsel for an adjournment in order that further argument might be made and authorities presented as to the testimony taken on the examination being sufficient to justify binding defendant over for trial to the circuit court.

Under the circumstances we find no merit in appellant's various claims that "improper, irrelevant and immaterial evidence" was received on the examination over the objection of defendant's counsel. Granting such to be the fact, since there was sufficient competent testimony, it was not error to hold defendant for trial. Other of defendant's objections to the regularity of the examination and as to its being such as justified binding him over to the circuit court for trial have been considered but we find them to be without merit.

2. Failure of defendant to qualify as justice. On his trial in the circuit court Matthews urged as a defense that he could not be convicted under the information charging him with misconduct as a public officer, *i. e.*, a justice of the peace, because of his failure to comply with the requirements of the statute and the city charter of Hastings where he was elected, as to filing an oath of office and proper official bonds.

"Every township office, including the office of justice of the peace, shall become vacant upon the happening of either of the events specified in chapter fifteen (1 Comp. Laws 1929, § 3348 *et seq.* [Stat. Ann. § 6.691 *et seq.*]) as creating a vacancy." 1 Comp. Laws 1929, § 996 (Stat. Ann. § 5.41).

"Every office shall become vacant on the happening of either of the following events, before the expiration of such term of office: * * *

"(7) His (the incumbent's) refusal or neglect to take his oath of office, or to give or renew any official bond." 1 Comp. Laws 1929, § 3350 (Stat. Ann. § 6.693).''

The charter of the city of Hastings provides:

"Justices of the peace elected in the city shall take and file an oath of office with the county clerk within the same time and in the same manner as in cases of justices of the peace elected in townships." Hastings city charter, chap. 5, § 5.

"Each justice of the peace, in addition to any other security required by law to be given for the performance of his official duties shall, before entering upon the duties of his office, give a bond to the city, in penalty of one thousand dollars, with sufficient sureties to be approved by the mayor, which approval shall be indorsed upon the bond, conditioned for the faithful performance of the duties of justice of the peace within and for the city." Hastings city charter, chap. 6, § 32.

In addition to the above charter requirement for filing a bond, the statutes of this State provide:

"Each justice of the peace before he enters upon the duties of his office, and within the time limited by law for filing his official oath, shall execute in the presence of * * * the county clerk with one or more sufficient sureties to be approved of by such * * * county clerk an instrument in writing, by which said justice and his sureties shall jointly and severally agree to pay to each and every person entitled thereto, all such sums of money as such justices shall become liable to pay, for, or on account of, any money which may come into his hands as a justice of the peace." 1 Comp. Laws 1929, § 1026 (Stat. Ann. § 5.78).

Defendant filed an oath of office and an official bond with the county clerk, but he did not file a bond as

required by the charter of the city of Hastings.
Defendant contends, for reasons he has pointed out,
that the bond filed with the county clerk did not
comply fully with statutory requirements. For the
purpose of decision herein it may be conceded that
the bond filed with the county clerk did not fully
comply with the statutory requirement and that no
bond or oath of office was filed under the provision
of the city charter. Notwithstanding this, we think
it conclusively appears from this record, as the cir-
cuit judge held, defendant was an officer *de facto*.
In April, 1931, he was elected to fill a vacancy; and in
April, 1933, he was elected as a justice for a period
of four years. He served until his term expired in
1937. In the very transactions out of which the
criminal conduct herein charged arose, defendant
was acting as a justice of the peace. In that capacity
he received the money which he is charged with
having knowingly and unlawfully appropriated to
his own use. Under such circumstances it does not
lie in his mouth to assert that by reason of his having
failed properly to qualify he was in no sense a public
officer and therefore could not be convicted for viola-
tion of the statute under which he was prosecuted
for malfeasance as a public officer. Notwithstanding
the statute first above quoted provides the office
"shall become vacant," nonetheless defendant was
an officer *de facto* and functioned for years as such.
*People* v. *Payment,* 109 Mich. 553; and *People* v.
*Sanders,* 139 Mich. 442.

"An officer *de facto* is one who has the reputation
of being the officer he assumes to be, and yet is not a
good officer in point of law. A person will be held
to be a *de facto* officer when, and only when, he is in
possession, and is exercising the duties, of an office;
his incumbency is illegal in some respect; he has at
least a fair color of right or title to the office, or has

acted as an officer for such a length of time, and under such circumstances of reputation or acquiescence by the public and public authorities, as to afford a presumption of appointment or election, and induce people, without inquiry, and relying on the supposition that he is the officer he assumes to be, to submit to or invoke his action; and, in some, although not all, jurisdictions, only when the office has a *de jure* existence." 46 C. J. p. 1053.

3. Conflict between charter provisions and statutory provisions. The Hastings city charter expressly provides that all fines, penalties and forfeitures collected by a justice of the peace for violations "of the penal laws of the State" or "on account of violations of any ordinances" shall be paid by the justice to the city treasurer (Chap. 6, § 29). But by statute (3 Comp. Laws 1929, § 15178 [Stat. Ann. § 27.2223]), it is provided that all fines collected shall be paid over to the county treasurer within 20 days after receipt by the officer. It clearly appears from this record that during the whole period defendant had been serving as justice of the peace the established custom was to account to the county treasurer notwithstanding the city charter provision. To the extent defendant did account for the fines collected, he paid them to the county treasurer. There is no claim that defendant ever accounted for any of the fines collected by him to the Hastings city treasurer. The undisputed testimony is that he made no such payment. For the purpose of decision of this appeal it is of no consequence whether defendant should have accounted to the county treasurer or to the city treasurer. He is not charged with an offense because he failed to account to the one or the other of these public officials. Instead the charge made against him is that he knowingly and unlawfully appropriated to his own use fines collected by him as

justice of the peace. The above-noted conflict between the charter provision and the statutory provision has nothing to do with defendant's guilt or innocence under the record made in this case.

4. Proof of intent. On or about January 3, 1938, shortly prior to his arrest on the instant charge and after the dismissal of a previous charge of a similar nature, defendant paid the county treasurer $430 as fines and $24 as costs. In making this payment of $454 he refused to indicate to the county treasurer the particular items of fines collected by him to which this money should be applied. Theretofore the established custom had been definitely to earmark various sums of money paid over by defendant to the county treasurer as being for specified fines collected in specified cases. Such procedure was seemingly a necessity to enable a proper checkup against the returns of the justice to the county showing cases wherein there had been convictions before him and a collection of fines. In view of the situation with which the prosecutor was confronted in the above particular, as well as the necessity of establishing intent in the instant case, testimony was received over an extended period prior to that wherein defendant was charged in this case with appropriating public money to his own use. From this testimony it was made to appear that on numerous prior occasions defendant had not accounted to the county treasurer for fines collected and that he was short on his remittances in a substantial amount. When testimony of these earlier items was offered objections were made by defendant's counsel but upon the prosecutor's statement that this testimony was offered for the purpose of showing the unlawful ''appropriation'' charged, it was received. Practically at the close of the trial it was stated by the circuit judge that testimony of this character was admis-

sible as tending to establish "intent." Notwith-
standing appellant's contention to the contrary, we
think there was nothing prejudicial or erroneous in
the manner of receiving this testimony. Defendant
was charged with having "knowingly and unlawfully
appropriated, et cetera" and obviously the question
of intent was involved. Defendant could not *know-
ingly* appropriate public funds without an intent to
do so. Testimony of other acts of like character on
the part of the accused was unquestionably admis-
sible to establish intent. (3 Comp. Laws 1929, § 17320
[Stat. Ann. § 28.1050].) *People* v. *Smith,* 271 Mich.
553; *People* v. *Hopper,* 274 Mich. 418.

Contrary to appellant's contention, it was not
essential to conviction that it should be shown de-
fendant used the money received in his official ca-
pacity for "private investment or personal expendi-
ture, deposit or concealment." If defendant know-
ingly retained for his own use or benefit these public
funds, there was an unlawful appropriation.

At the trial the prosecuting attorney definitely
elected to establish the alleged unlawful appropria-
tions during the period within six months next fol-
lowing December 4, 1936. Appellant insists that
since just before his arrest in the instant case he paid
to the county treasurer $430 collected fines and $24
collected costs, which amount was more than the al-
leged unlawful appropriation during the period fixed
by the prosecuting attorney, there can be no convic-
tion. At the time of making the payment of $454,
defendant was well aware of the impending prosecu-
tion. He had just been discharged in a like prosecu-
tion by having the information quashed. Further,
even if it be assumed it was intended to apply to the
period of the offense charged, the payment of $454
was made substantially a year after defendant had
received this amount as fines and costs, instead of

within 20 days thereafter. 3 Comp. Laws 1929, § 15178 (Stat. Ann. § 27.2223) ; and the payment was not made until approximately six months after defendant's term of office had expired. If, as charged, defendant had knowingly and unlawfully appropriated these public funds months prior to the belated payment of $454, the committed offense was not thereby expiated. As hereinbefore noted, defendant refused to designate this amount as being in payment of money collected in his official capacity during the period covered by the prosecution and there was testimony of many prior unlawful appropriations aggregating a total in excess of $500. Further, the county treasurer testified that his records did not show defendant had paid to the county treasurer the specific fines in the cases on which the prosecuting attorney relies for a conviction. Notwithstanding partial restitution made by defendant, the proof received by the trial judge was ample to sustain his finding that during the designated period defendant had committed the offense charged.

Other questions are raised in the total of 16 propounded in appellant's brief. We have considered them but fail to find any reason for reversal. The judgment entered in the circuit court is affirmed.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, CHANDLER, and MCALLISTER, JJ., concurred. POTTER, J., did not sit.