PEOPLE *v.* ASTA.

1. CONSPIRACY—EVIDENCE—STATEMENTS BY CO-CONSPIRATORS AFTER TERMINATION OF CONSPIRACY.

Statements, made by co-conspirators after termination of the conspiracy, are not competent as against the other conspirators.

2. CRIMINAL LAW—DETECTION OF CRIME—DISCLOSURE OF SOURCES OF INFORMATION.

Persons engaged in the detection of crime are not bound to disclose the sources of the information which led to the apprehension of the prisoner.

3. COMMERCE—BURDEN ON INTERSTATE COMMERCE—STATES.

A State does not have the power to impose upon interstate commerce a burden sufficiently serious in character as to constitute an interference with it.

4. SAME—INTERSTATE COMMERCE—STATES—POLICE POWER—TAXATION.

The mere fact that interstate commerce is to some extent affected

REFERENCES FOR POINTS IN HEADNOTES

[1] 11 Am Jur, Conspiracy § 41.
[2, 20] 14 Am Jur, Criminal Law § 210.
[3] 11 Am Jur, Commerce § 20.
[4] 11 Am Jur, Commerce §§ 94, 119.
[5] 11 Am Jur, Commerce § 62.
[6] 11 Am Jur, Commerce §§ 45, 97; 33 Am Jur, Licenses § 43.
[7] 11 Am Jur, Conspiracy § 29.
[8] 50 Am Jur, Statutes § 310 *et seq.*
[9] 47 Am Jur, Sales and Use Taxes § 10.
[10] 11 Am Jur, Commerce § 10 *et seq.*
[11] 11 Am Jur, Commerce §§ 22, 23.
[12–14, 17] 14 Am Jur, Criminal Law § 248.
[15] 11 Am Jur, Conspiracy § 38.
[16] 11 Am Jur, Conspiracy § 10 *et seq.*
[18, 19] 11 Am Jur, Conspiracy § 39.
[21] 14 Am Jur, Criminal Law § 246.
[22, 23, 27] 11 Am Jur, Conspiracy § 42.
[24, 25] 11 Am Jur, Conspiracy § 40.
[26] 20 Am Jur, Evidence § 1233.

by the operation of State legislation enacted pursuant to the police power, or the power to tax, does not necessarily render such legislation invalid.

5. SAME—INTERSTATE COMMERCE—TAXATION AFTER COMMINGLING.
    Property which has been transported in interstate commerce and which has been commingled with the general mass of property in the State into which it is taken even though in the original package is subject to taxation there, since it is then based upon the privilege of use after commerce is at an end.

6. TAXATION — CIGARETTES — TRANSPORTER — NOMINAL PERMIT FEE — INTERSTATE COMMERCE.
    Requirement of cigarette tax act that a transporter of cigarettes, as there defined, obtain a permit for which the fee is the nominal sum of $1, does not constitute an undue burden upon interstate commerce, since it is designed to promote the enforcement of the act and assist officers in detecting violations of the law (CL 1948, §§ 205.501, 205.506).

7. SAME—INDICTMENT AND INFORMATION—CONSPIRACY—LICENSES— PERMITS—CIGARETTES.
    Allegation in information that defendants were transporting cigarettes into this State from a point outside of the State without having a license and permits therefor is construed as an attempted specification of the illegal means used by defendants to accomplish their ultimate objective of conspiracy to possess, sell, and distribute cigarettes without obtaining a license therefor and without paying the required tax (CL 1948, § 205.501 et seq.).

8. STATUTES—CONSTRUCTION—GENERAL PURPOSE—TITLE OF ACT.
    The provisions of a statute must be construed in connection with the general purpose as set forth in the title.

9. TAXATION — CIGARETTES — STATES — UNITED STATES — INTERSTATE COMMERCE.
    The fact that Federal assistance has been extended to States, in collecting sales and use taxes on cigarettes, by way of requiring that shipments to an unlicensed distributor in a State where a tax is imposed be reported to the tax administrator, is entirely consistent with the theory that State legislatures may properly incorporate in an act providing for taxation provisions designed to guard against evasion of the obligation imposed so long as the effect on interstate commerce is incidental and is not so burdensome as to constitute an interference therewith (63 Stat 884).

10. CONSTITUTIONAL LAW — INTERSTATE · COMMERCE — CONGRESS — STATES.

    The commerce clause of the Constitution of the United States gives to congress a power over interstate commerce which is paramount and broad in scope but not exclusive; it being permissible for a State to regulate matters of local concern over which Federal authority has not been exercised, even though the regulation has some impact on interstate commerce and although the State regulation must safeguard an obvious State interest and the State interest outweigh whatever national interest there might be, and the regulation may not discriminate against or place an embargo on interstate commerce (US Const, art 1, § 8[3]).

11. SAME — INTERSTATE COMMERCE — FREEDOM FROM REGULATION.

    The quiescence of Federal power in the field of interstate commerce is not an affirmation that the national interest lies in complete freedom from regulation.

12. CRIMINAL LAW — PRELIMINARY EXAMINATION — PROBABLE CAUSE — BINDING DEFENDANT OVER FOR TRIAL.

    The magistrate at a preliminary examination may bind a defendant over to the circuit court for trial if it appears from the proofs that an offense not cognizable by a justice of the peace has been committed and that there is probable cause for charging defendant therewith; it being unnecessary that the justice, as examining magistrate, find the guilt of the defendant established beyond a reasonable doubt (CL 1948, § 766.13).

13. SAME — PRELIMINARY EXAMINATION — PROBABLE CAUSE.

    "Probable cause," as the term is used in statute relating to preliminary examinations by justices of the peace, has reference to the connection of the defendant with the alleged offense rather than to the *corpus delicti* (CL 1948, § 766.13).

14. SAME — PRELIMINARY EXAMINATION — EVIDENCE OF COMMISSION OF CRIME.

    Finding of trial court that at the preliminary examination there was a complete lack of proof that the crime of conspiracy, as charged in the warrant, had been committed is affirmed upon examination of the proofs taken (CL 1948, § 766.13).

15. CONSPIRACY — CIRCUMSTANTIAL EVIDENCE.

    The crime of conspiracy may be shown by circumstantial evidence.

16. SAME—ACCOMPLISHMENT OF PURPOSE—EVIDENCE—GIST OF OFFENSE.

It is not requisite to show that the purpose contemplated by the unlawful agreement involved in a conspiracy was accomplished as the gist of the offense lies in the illegal agreement.

17. CRIMINAL LAW—PRELIMINARY EXAMINATION—BURDEN OF PROOF.

The people have the burden of showing at a preliminary examination by competent evidence, circumstantial or otherwise, that the crime charged had been committed and that there was probable cause to believe defendants charged were guilty thereof (CL 1948, § 766.13).

18. SAME—CONSPIRACY—INTENT—EVIDENCE.

Crime of conspiracy to become transporters and unclassified acquirers of cigarettes within this State and to possess, sell, and distribute them without the prescribed license and without paying the tax *held,* not proved by testimony that was equally consistent with a purpose and plan on the part of defendants to continue the transportation in interstate commerce through and across this State, the matter of intent being left to conjecture (CL 1948, § 205.501 *et seq.*).

19. CONSPIRACY—INTENT—EVIDENCE.

Testimony that some of the defendants charged with conspiracy to become transporters and unclassified acquirers of cigarettes within this State and to possess, sell and distribute them without prescribed license or payment of tax had previously been involved in violations of the statute by bringing cigarettes into the State for sale and distribution here without obtaining a license or paying the required tax may not be construed as proof of an unlawful intent, purpose and agreement in the conspiracy case (CL 1948, § 205.501 *et seq.*).

20. CRIMINAL LAW — ARREST — INFORMATION FROM CONFIDENTIAL SOURCES.

Arresting officers are entitled to rely on information they acquire from confidential sources without disclosing the identity of such sources.

21. SAME—PRELIMINARY EXAMINATION—WITNESSES.

Defendants in prosecution for crime are entitled to have witnesses examined in their presence on the preliminary examination (CL 1948, § 766.4).

22. SAME—CONSPIRACY—CORPUS DELICTI—HEARSAY.

The fact that crime of conspiracy had been committed could not be established at preliminary examination by hearsay testimony.

23. CONSPIRACY—PRELIMINARY EXAMINATION—CORPUS DELICTI—CONNECTING TESTIMONY.

The *corpus delicti* of a conspiracy must be proved at the preliminary examination before testimony may be received establishing connection between the crime and particular defendants by statements they had made after their arrest.

24. SAME — CORPUS DELICTI — CONFESSIONS — COMPETENCY OF EVIDENCE.

Alleged extrajudicial confessions of 2 of several persons charged with conspiracy would be incompetent as against other defendants even after establishment of the *corpus delicti*.

25. SAME—CORPUS DELICTI—CONFESSIONS.

Alleged extrajudicial confessions of 2 of several persons charged with conspiracy could not be relied on to prove the *corpus delicti* of conspiracy charge.

26. CRIMINAL LAW—CORPUS DELICTI—CONFESSIONS.

The *corpus delicti* must be proved without the aid of an extrajudicial confession and before such confession may be proved.

27. SAME—CONSPIRACY—CORPUS DELICTI—PRELIMINARY EXAMINATION—EVIDENCE.

Motion to quash information charging a conspiracy was properly granted because of people's failure to present competent evidence at the preliminary examination to show that the crime charged had been committed.

Appeal from Berrien; O'Hara (Chester P.), J., presiding. Submitted June 11, 1953. (Docket No. 73, Calendar No. 45,570.) Decided October 5, 1953.

Defendants were charged with conspiracy to violate the cigarette tax act. Motion to dismiss was granted. The people appeal. Affirmed.

*Frank G. Millard*, Attorney General, *Edmund E. Shepherd*, Solicitor General, *Daniel J. O'Hara, T. Carl Holbrook* and *William B. Elmer*, Assistants Attorney General, and *Joseph E. Killian*, Prosecuting Attorney, for the people.

*Charles W. Gore* and *Thomas N. Robinson, Sr.*, for defendants.

CARR, J.  Defendants in this case were arrested under a warrant charging them with criminal conspiracy to violate the provisions of PA 1947, No 265, as amended by PA 1949, No 312, and by PA 1951, No 78\*, commonly referred to as the cigarette tax act.  An examination was duly held pursuant to the statute and defendants were bound over to the circuit court of Berrien county for trial.  An information was filed which, on motion, was dismissed by the circuit judge hearing the matter.  On leave granted the people have appealed from the order entered.

The statute cited was enacted for the purpose of imposing an excise and specific tax on the sale and distribution of cigarettes within this State.  In order to facilitate the carrying out of such purpose, provisions were included for the regulation and licensing of persons engaged in the business of handling, selling and distributing cigarettes.  The purpose of the legislature in the enactment of the statute clearly appears from the title which, as amended by the act of 1951, above cited, reads as follows:

"An act to impose an excise and specific tax upon the sale and distribution of cigarettes in this State; to regulate and license manufacturers, wholesalers, vending machine operators, unclassified acquirers, transportation companies, transporters and retailers thereof, as herein defined; to prescribe the powers and duties of the Michigan department of revenue with respect thereto; to provide for the collection of such tax and the disposition thereof; to provide for the enforcement of this act; to make an appropriation; and to prescribe penalties for the violation of this act."

Section 1 defines the terms, used in the title, designating the various parties subject to regulation and

---

\* (CL 1948, § 205.501 *et seq.*, as amended by PA 1949, No 312, and by PA 1951, No 78 [Stat Ann and Stat Ann 1951 Cum Supp § 7.411(1) *et seq.*]).

licensing. Inasmuch as it is the claim of counsel for the appellant that the alleged conspiracy contemplated that defendants would, in the furtherance of their plans, have possession of cigarettes in this State as transporters and as unclassified acquirers, and would sell and make distribution thereof as such, the exact meaning of said terms becomes material. Section 1(6), as amended in 1951, defines "unclassified acquirer" as follows:

" 'Unclassified acquirer' shall mean and include any person, other than a transportation company, who imports or acquires cigarettes for sale or distribution from a source located outside the State of Michigan other than a manufacturer, a wholesaler, a secondary wholesaler or a vending machine operator licensed under this act."

The definition of "transporter" was added to the statute by the amendatory act as section 1(13) and reads as follows:

" 'Transporter' shall mean any person importing or transporting into this State, or transporting in this State, cigarettes obtained from a source located outside the State of Michigan, or from any person not duly licensed under this act: Provided, That it shall not include an interstate commerce carrier licensed by the interstate commerce commission to carry commodities in interstate commerce, or a licensee maintaining a warehouse or place of business outside of Michigan when such warehouse or place of business is licensed under this act, or any person transporting no more than 4,000 cigarettes at one time."

Such definition should doubtless be read in connection with the provision of section 1(7) which provides that a transportation company "shall mean and include any person operating, or supplying to a common carrier, cars, boats or other vehicles for the transportation or accommodation of passengers and

engaged in the sale of cigarettes at retail." It is a legitimate inference that the legislature has used the term "transporter" as applying to one engaged in activities other than as a transportation company.

Other sections of the act relate to the granting of licenses and permits, to the renewal thereof, and to suspension or revocation for cause. The keeping of records by those engaged in the business is also prescribed. Section 6 imposes the following requirements applicable to transporters:

"Every transporter who shall transport or possess or acquire for the purpose of transporting any cigarettes upon the public highways, roads or streets of this State shall be required to have in his actual possession invoices or bills of lading containing the name and address of both the seller and the purchaser, the date of delivery, the name and address of the transporter, the quantity of cigarettes, the trade name or brand thereof, the price paid for each brand of cigarettes in such transporter's possession or custody and the license as prescribed under this act.

"Any transporter desiring to possess or acquire for transportation or transport any cigarettes upon the highways, roads or streets of this State shall obtain a permit from the department authorizing such transporter to possess or acquire for transportation or transport any cigarettes, and shall have such permit in his possession while such cigarettes are in his possession. This permit shall be obtained for each load being transported and shall contain therein a statement setting forth the name and address of the purchaser, seller and the transporter, the license number of the purchaser, the date of the delivery of the cigarettes or date of importation into this State, the route to be followed in the event the cigarettes are being transported from an out-of-State source and such other information as the department may require. The department shall make available such permits on a form prescribed by it on

the application of any transporter with remittance of a fee of $1.

"Whenever any transporter transports any cigarettes into this State, such transporter shall stop at the nearest State police post within this State on the route authorized by the permit and disclose the cigarettes in his possession and the papers required to be in his possession by the provisions of this section."

The making of returns to the State department of revenue and the payment of the specific tax imposed by the act, including such returns and payments by unclassified acquirers, are provided for in section 7, which reads as follows:

"Every licensee under section 3, other than an unclassified acquirer, shall, on or before the 20th day of each calendar month, file with the department, on a form prescribed by it, a return under the penalties of perjury for each place of business maintained, stating the number of cigarettes purchased and sold by such licensee in the State during the preceding calendar month and such return shall contain or be accompanied by such further information as the department shall require: Provided, That if a licensee ceases to sell cigarettes within the State he shall forthwith file with the department such a return for the period ending with such cessation. Such licensee shall, at the time of filing such return, pay to the department an excise equal to 1–1/2 mills for each cigarette so sold during the calendar month covered by the return less 1 per cent compensation from the total amount of tax due to cover the cost of expenses of the wholesaler incurred in the administration of this act: Provided, That nothing in this act shall be deemed to prohibit any licensee from paying the excise tax imposed by this act upon the importation or acquisition of cigarettes and the department shall prescribe the form for such computation and payment of tax: Provided, That cigarettes with respect to which the excise under this act has once been imposed and has not been refunded if paid,

shall not be subject upon a subsequent sale to the excise imposed by this act. Irrespective of any provisions of this act to the contrary, the department may, whenever it deems it advisable to protect the interests of the State, require any such licensee required to file monthly returns under this act to file supplemental returns whenever so directed by the department, accompanied by a remittance of the tax due, covering the tax due on the business done for such portion of the month as the department may direct. Each unclassified acquirer shall, upon importation or acquisition of cigarettes from any source whatsoever, file with the department a return under penalties of perjury, on a form to be furnished by the department, stating the number of cigarettes imported or acquired and such other information as the department shall require, and shall, at the time of filing such return, pay to the department an excise equal to 1–1/2 mills for each cigarette so imported or acquired and held for sale or consumption, and cigarettes with respect to which such excise has been imposed and has not been refunded if paid, shall not be subject, when subsequently sold, to any further excise under this act. An abatement or refund of the excise provided by this act may be made by the department for such causes as the department may deem expedient. The department shall certify said amount to the auditor general and the State treasurer shall pay said amount without any appropriation therefor out of the proceeds of such excise."

Penalties for violations of the act are set forth in section 9 thereof as amended in 1951. In accordance therewith the possession, acquiring, transportation, or offering for sale of cigarettes having a wholesale price in excess of $50, contrary to the provisions of the statute, is a felony. Such an act with reference to cigarettes having a value of $50 or less is declared a misdemeanor. Provision is also made for seizure and confiscation by the State department of revenue in case of a violation of the statute.

The testimony taken on the preliminary examination tended to establish that prior to the 15th of December, 1951, representatives of the Michigan State Police and of the State department of revenue were engaged in investigating alleged violations of the act. Information was received from confidential sources that certain of the defendants were engaged in the business of hauling cigarettes from St. Louis, Missouri, to Detroit. Specific information was also obtained from such sources to the effect that during the week of December 10, 1951, a load of cigarettes would be transported as far as Hobart, Indiana, by tractor and trailer. At the point named the load was to be transferred to a semitrailer bearing the designation "Stahl Farm Produce." The investigators were also informed that the load would be followed, at least after it left Hobart, by a Nash sedan occupied by 3 or 4 armed men, presumably charged with the duty of protecting the trailer and its load.

The commanding officer of the State police post at New Buffalo, Berrien county, was given the information; and a representative of the department of revenue, accompanied by a detective of the State police, went to Hobart where they discovered the trailer marked as above indicated. Observations were maintained for the purpose of ascertaining when the expected load of cigarettes might arrive and be transferred to said trailer for further transportation, and to learn the time of departure thereof from Hobart. Being advised that the trailer which was supposed to carry the load of cigarettes across the State line into Michigan had left Hobart early in the morning of December 15th, the investigators notified the State police post at New Buffalo accordingly. In consequence the tractor and trailer were stopped by police officers in Berrien county a few miles north of the State line, a search was made, and it was discovered that the trailer was carrying a load

of cigarettes. The Nash automobile was also followed and stopped by other officers, and its occupants arrested. A search of the car revealed the presence of firearms.

Defendant Bonacci was driving the tractor with trailer attached at the time the equipment was stopped. He was searched at the State police post and a statement found on his person indicating that he had acquired 300 cases of cigarettes in St. Louis. Bonacci and Meadows, interviewed by representatives of the State, made statements indicating their connection with the bringing of cigarettes into Michigan for sale and distribution here in violation of the statute. Objection to the proof of such statements was duly made on behalf of the other defendants. It is not claimed by counsel for the people that testimony as to the admissions made by these 2 defendants was competent as against the others, said statements having been made after the termination of the alleged conspiracy. A search of the records of the department of revenue, made after the seizure of the cigarettes and the arrest of the defendants in the tractor and in the Nash automobile, revealed that no license had been granted to any defendant as an unclassified acquirer and, likewise, that there was no application shown by the records as made by the defendants or any of them for a license to act in any capacity under the provisions of the cigarette tax act.

The motion to quash the information alleged 8 specific reasons in support thereof, the principal questions raised being: 1st, that the testimony on the preliminary examination failed to show that the crime charged against defendants had been committed and failed to establish probable cause to believe that defendants or any of them were guilty thereof; 2d, that the search of the trailer and the seizure of 286 cases of cigarettes therein was unrea-

sonable and hence illegal and invalid; 3d, that the cigarette tax act is unconstitutional for various reasons, emphasis being placed on the alleged attempt of the Michigan legislature to regulate and burden interstate commerce. The circuit judge concluded that the claim of the defendants with reference to the search and seizure was not well-founded, that under the circumstances the officers had the right to rely on the confidential information that they had received, and that the arrest of the defendants taken into custody at the time was not unlawful. Such holding is in accordance with the rule recognized in this State and declared in *People* v. *Laird,* 102 Mich 135, 138, as follows:

"The general rule is that persons engaged in the detection of crime are not bound to disclose the sources of the information which led to the apprehension of the prisoner. The reason for the rule is that such disclosure can be of no importance to the defense, and may be highly prejudicial to the public in the administration of justice by deterring persons from making similar disclosures."

See, also, *People* v. *Ward,* 226 Mich 45; *State, ex rel. Wayne Prosecuting Attorney,* v. *Martin,* 314 Mich 317.

The court came to the conclusion, however, that the act must be interpreted as contemplating interference in certain respects with interstate commerce and as imposing a burden on it. To the extent that it does so the act was declared invalid, the judge stating specifically in his opinion that as applied to intrastate commerce it was not open to objection. He further found that there was no competent testimony taken on the preliminary examination tending to show that it was the plan, purpose and agreement of the defendants to terminate the transportation of this load of cigarettes in Michigan, and to possess, sell, and distribute it in violation of the statute. An

order was accordingly entered granting the motion.

The information sets forth that on the 15th day of December, 1951, and on divers other dates between that day and the 28th day of May, 1951, the defendants unlawfully conspired and agreed together, among themselves and with other persons "to import and acquire cigarettes for sale and distribution from a source located outside the State of Michigan, said cigarettes having a wholesale value in excess of $50 and without having and obtaining a license therefor, and to transport cigarettes of a number of more than 4,000 obtained from a source located outside the State of Michigan without having a license and permits therefor, and to transport and acquire cigarettes in excess of the number of 4,000 from sources outside the State of Michigan, without keeping a complete and accurate record of said cigarettes in excess of the number of 4,000 so transported and acquired and to acquire from sources outside of the State of Michigan cigarettes in excess of the number of 4,000 and to import and transport the same into the State of Michigan for sale and distribution and to possess the same in the State of Michigan without paying the tax thereon as required by the statute in such case made and provided, and to acquire, possess, import, transport, for sale and distribution cigarettes without payment of the tax thereon."

Counsel for appellant, in discussing the question in their brief, construe the information as charging a conspiracy "to import and acquire from a source located outside the State of Michigan, and to possess, transport and offer for sale in the State of Michigan, cigarettes without having and obtaining the license and permit required of them and others by the act, without paying the tax imposed thereby, and without otherwise complying with the terms of

the statute in question." No claim is made that the State has the power to impose a tax in any form on interstate commerce or to impose thereon a burden sufficiently serious in character as to constitute an interference with it. The legal situation in this respect has been repeatedly recognized and declared by this Court. *J. B. Simpson, Inc.,* v. *O'Hara,* 277 Mich 55; *Montgomery Ward & Co., Inc.,* v. *Fry,* 277 Mich 260; *Lake Shore Coach Lines, Inc.,* v. *Secretary of State,* 327 Mich 146; *Ashton Power Wrecker Equipment Company* v. *Department of Revenue,* 332 Mich 432. However, as the foregoing decisions and others of like character recognize, the mere fact that interstate commerce is to some extent affected by the operation of State legislation enacted pursuant to the police power, or to the power to tax, does not necessarily render such legislation invalid. Likewise, property that has been transported in interstate commerce and which has been commingled with the general mass of property in the State into which it is taken is subject to taxation there. Thus in *Henneford* v. *Silas Mason Co., Inc.,* 300 US 577, 582 (57 S Ct 524, 81 L ed 814), in discussing the validity of the California use tax, it was said:

"The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end.

"Things acquired or transported in interstate commerce may be subjected to a property tax, nondiscriminatory in its operation, when they have become part of the common mass of property within the State of destination. *Wiloil Corp.* v. *Pennsylvania,* 294 US 169, 175 (55 S Ct 358, 79 L ed 838); *Cudahy Packing Co.* v. *Minnesota,* 246 US 450, 453 (38 S Ct 373, 62 L ed 827); *Brown-Forman Co.* v. *Kentucky,* 217 US 563, 575 (30 S Ct 578, 54 L ed 883); *American Steel & Wire Co.* v. *Speed,* 192 US 500, 519 (24 S Ct 365, 48 L ed 538); *Woodruff* v. *Parham,* 8 Wall (75 US) 123, 137 (19 L ed 382).

This is so, indeed, though they are still in the original packages. *Sonneborn Bros.* v. *Cureton,* 262 US 506 (43 S Ct 643, 67 L ed 1095); *American Steel & Wire Co.* v. *Speed, supra; Woodruff* v. *Parham, supra.* For like reasons they may be subjected, when once they are at rest, to a nondiscriminatory tax upon use or enjoyment."

See, also, *Banner Laundering Co.* v. *State Board of Tax Administration,* 297 Mich 419; *Commonwealth* v. *Flickinger,* 365 Pa 59 (73 A2d 652).

It will be noted that the information, above quoted in part, makes reference to an alleged plan and agreement among the defendants, conspiring with one another and with others, to transport into the State cigarettes of a number of more than 4,000, obtained from a source outside of Michigan, without having a permit therefor. As before noted, the fee for the transporter's permit is $1. Obviously the charge so imposed must be classified as merely nominal. That such a requirement is not so burdensome as to constitute an interference with interstate commerce finds support in the holding of the United States supreme court in *Duckworth* v. *Arkansas,* 314 US 390 (62 S Ct 311, 86 L ed 294, 138 ALR 1144). It was there held that a statute of the State of Arkansas requiring a permit for the transportation of intoxicating liquor through the State, the fee therefor being nominal in amount, was valid. Attention was called to the fact that such statute was designed to enable local officers to insure transportation without diversion. Of like import is *Lloyd A. Fry Roofing Co.* v. *Wood,* 344 US 157 (73 S Ct 204, 97 L ed 168).

In the case at bar the requirement with reference to the transporter's permit is designed to promote the enforcement of the cigarette tax act and to assist officers charged with duties in that respect in detecting violations of the law. So viewed it may

not be regarded as an undue burden on interstate commerce. However, as pointed out by the trial judge in his opinion, the officers who arrested defendants and seized the cigarettes had no knowledge whether the defendants or any of them had been granted a permit to transport within the State. No claim is made on behalf of the people that the shipment was stopped and the arrests made on any such basis. There was no showing on the preliminary examination that the information from confidential sources on which the police officers relied touched in any way the matter of a permit. It is apparent that said officers acted on the theory indicated by the information, as construed by counsel for the appellant, that the defendants were bringing cigarettes into the State of Michigan for the purpose of possessing, selling, and distributing them within the State without obtaining a license therefor and without paying the required tax. On this record further consideration of the provision of the statute relating to the transporter's permit is not required. The allegation in the information with reference thereto may be construed, in connection with other claims set forth therein, as an attempted specification of illegal means used by defendants to accomplish their ultimate objective.

The provisions of the statute in question must be construed in connection with the general purpose as set forth in the title. So read, we think the conclusion is fully justified that no such provision involved in any way in the case at bar is open to objection on the ground that its operation places an undue and improper burden on interstate commerce or is invalid for any other reason advanced by counsel for defendants. The discussion of possible objections to provisions not material to any issue here presented would serve no useful purpose. We do not understand that defendants contend that the

statute is void in its entirety. General assertions made in the argument of the case with reference to the constitutionality of pertinent provisions of the act, construed in the manner indicated by the opinion of this Court in *Cunningham Drug Stores, Inc.,* v. *Commissioner of Revenue,* 319 Mich 467, are not well-founded.

Counsel for appellant have directed attention to the act of congress of October 19, 1949, cited as chapter 699, §§ 1–3, 63 Stat 884, 885, 15 USCA, 1952 Cum Pocket Part, §§ 375–377, referred to also as Public Law 363 of the 81st Congress, 1st Session, entitled:

"An act to assist States in collecting sales and use taxes on cigarettes."

In accordance with the purpose suggested by the title, the act requires that any person selling or disposing of cigarettes in interstate commerce under a plan whereby such cigarettes are shipped to one who is not a distributor licensed by or located in a State taxing the sale or use of cigarettes to report the shipment to the tobacco tax administrator of the State into which such shipment is made. It is suggested, and logically so, that such congressional act may be properly construed as indicating a policy in keeping with State action designed to prevent evasions of a tax measure of the character here involved. The fact that Federal assistance has been extended into this field is consistent with the theory that State legislatures may properly incorporate in an act providing for taxation provisions designed to guard against evasion of the obligation imposed, so long as the effect thereof on interstate commerce is merely incidental and is not so burdensome as to constitute, from a practical standpoint, an interference therewith. The purpose of said act is in accord with the position taken by the Federal supreme court on the matter at issue. In *Cities Service Gas*

*Co.* v. *Peerless Oil & Gas Co.,* 340 US 179, 186, 187 (71 S Ct 215, 95 L ed 190), it was said:

"The commerce clause* gives to the congress a power over interstate commerce which is both paramount and broad in scope. But due regard for State legislative functions has long required that this power be treated as not exclusive. *Cooley* v. *Port Wardens,* 12 How (53 US) 299 (13 L ed 996) (1851). It is now well settled that a State may regulate matters of local concern over which federal authority has not been exercised, even though the regulation has some impact on interstate commerce. *Parker* v. *Brown,* 317 US 341 (63 S Ct 307, 87 L ed 315) (1943); *Milk Control Board* v. *Eisenberg Farm Products,* 306 US 346 (59 S Ct 528, 83 L ed 752) (1939); *South Carolina State Highway Dept.* v. *Barnwell Bros., Inc.,* 303 US 177 (58 S Ct 510, 82 L ed 734) (1938). The only requirements consistently recognized have been that the regulation not discriminate against or place an embargo on interstate commerce, that it safeguard an obvious State interest, and that the local interest at stake outweigh whatever national interest there might be in the prevention of State restrictions. Nor should we lightly translate the quiescence of Federal power into an affirmation that the national interest lies in complete freedom from regulation."

This brings us to a consideration of the question whether the testimony taken on the preliminary examination was sufficient to authorize the magistrate to hold the defendants for trial in circuit court. As before noted, the circuit judge in passing on the motion to quash the information determined this question adversely to the people. Counsel for defendants insist that such holding was correct. Apparently they are not in material disagreement with the appellant as to the interpretation of the statute and the proper construction to be placed on the informa-

---

* US Const, art 1, § 8(3).—Reporter.

tion. The following quotation from their brief indicates their position in this regard:

"The fundamental basis of the act, insofar as it pertains to unclassified acquirers, presumes that such person is engaged in the act of importing cigarettes from a source located outside of the State of Michigan and that he is importing them into the State 'for sale or distribution'.

"The words 'for sale or distribution', connote a destination within the limits of the State of Michigan, or possession for the purpose of sale to the degree that the goods transported become intermingled with, and are subject to the burdens and entitled to the protection of, all other personal property within the State. We are, therefore, immediately confronted by the question as to whether or not there was any proof at the preliminary examination that the cigarettes being transported from Hobart, Indiana, were destined to be delivered within the State of Michigan."

Under the statute relating to preliminary examinations (CL 1948, § 766.13 [Stat Ann § 28.931]) the magistrate may bind a defendant, or defendants, over to the circuit court for trial if it shall appear from the proofs that an offense not cognizable by a justice of the peace has been committed, and that there is probable cause for charging defendant, or defendants, therewith. In the instant case it was not required that the justice find the guilt of the defendants established beyond a reasonable doubt. *People* v. *Hirschfield,* 271 Mich 20, 27; *People* v. *Wilkin & Walsh,* 276 Mich 679, 687. It was essential, however, under the provisions of the statute, to determine that the offense charged had been committed, and that there was probable cause to believe that defendants were guilty.

The matter of "probable cause", as the expression is used in the statute, has reference to the connection

of the defendants with the alleged offense rather than to the *corpus delicti,* that is, to the fact that the crime charged has been committed by some person or persons. Such interpretation was placed on the statute by this Court in *People* v. *Matthews,* 289 Mich 440. There the justice of the peace conducting the examination made a preliminary announcement to the effect that there "was probable cause to believe" that the offense charged had been committed. Commenting thereon it was said:

"Obviously this statement of the justice did not constitute full compliance with the statutory requirement that on an examination the prosecutor must show that the offense charged has been committed and that there is probable cause to believe it was committed by the accused."

However, by subsequent written return the justice in the case cited stated in substance that the testimony before him disclosed that the offense charged had been committed, and that there was probable cause to believe the defendant guilty thereof. This was held a sufficient compliance with the statute which in terms, as was pointed out in the opinion, necessitates something more than a finding of probable cause insofar as the commission of the crime charged is concerned.

The query presented in the instant case is whether there was competent evidence before the justice of the peace on which to base a finding that the crime of conspiracy as charged in the warrant had been committed. The circuit judge found that there was a complete lack of such proof. A careful analysis of the proofs offered on the examination impels us to a like conclusion. In this connection we are not unmindful of the fact that the crime of conspiracy may be shown by circumstantial evidence. *People* v. *Kanar,* 314 Mich 242, and prior decisions there

cited. Neither is it requisite to show that the purpose contemplated by the unlawful agreement was accomplished. *People* v. *Gilman,* 121 Mich 187 (46 LRA 218, 80 Am St Rep 490). The gist of such offense lies in the illegal agreement. *People* v. *Smith,* 296 Mich 176. Nonetheless proofs on which to base the findings required by the statute must be introduced on a prelimiary examination to justify binding over to circuit court for trial. In the case at bar the burden rested on the people to show by competent evidence, circumstantial or otherwise, that the crime of conspiracy as charged in the warrant had been committed, and that there was probable cause to believe defendants guilty thereof.

Counsel for the State direct attention to certain facts and circumstances that they claim are consistent with the theory on which the people rest, namely, that the defendants conspired and confederated together to become transporters and acquirers of cigarettes within this State and to possess, sell, and distribute the same without the prescribed license and without paying the tax. However, the matters to which our attention is challenged appear equally consistent with a purpose and plan on the part of defendants to continue the transportation in interstate commerce through and across this State. The fact remains that what they actually intended to do is, on this record, a matter of conjecture. Testimony indicating that some of the defendants had previously been involved in violations of the statute by bringing cigarettes into the State for sale and distribution here without obtaining a license and without paying the required tax may not be construed as proof of an unlawful intent, purpose and agreement, in the instant case. There is nothing in the record before us tending to show that such defendants had not, on other occasions, transported through the State wholly in interstate commerce, or

that they did not intend to do so on the occasion in question here.

As before noted, there was testimony on the preliminary examination, received over objection of counsel for defendants as appears from the transcript filed in this Court, indicating that the officers investigating alleged violations of the cigarette tax act had received information from confidential sources with reference to defendants' operations. Presumably the testimony was received as bearing on the matter of the arrests and the seizure of the cigarettes thereafter. It is not claimed on behalf of the appellant that it was proper for consideration on the issue as to whether the crime charged had been committed. In other words, the officers making the arrests were entitled, in accordance with the rule recognized in cases hereinbefore cited, to rely on information they possessed that came to them from confidential souces, without disclosing the identity of such sources. On the preliminary examination, however, the defendants were, under the statute, entitled to have the witnesses examined in their presence. CL 1948, § 766.4 (Stat Ann § 28.922). In view of the nature and purpose of the proceeding, the fact that the crime charged had been committed could not be established by hearsay testimony.

Had the *corpus delicti* been shown by competent proof the testimony as to the statements made by defendants Bonacci and Meadows after their arrest would have been admissible, as against them, to establish their connection with the conspiracy. *People* v. *Reid,* 295 Mich 572; *People* v. *Campbell,* 301 Mich 670. In the case last cited it was said:

"The testimony before the magistrate is in the record and under defendants' appeal the first question is whether it established the fact, outside of defendants' extrajudicial statements, that the fire was of incendiary origin. If the fire was of incendiary

origin then statements of defendants of their connection therewith were admissible to show they committed the crime, but such extrajudicial statements could not be used to establish the fact that the fire was incendiary. *People* v. *Kirby,* 223 Mich 440. If the circumstances accompanying the fire disclosed it was of incendiary origin then commission of the crime by some one could be found. *People* v. *Burlingame,* 257 Mich 252; *Peterson* v. *Oceana Circuit Judge,* 243 Mich 215.

"If the fire was incendiary the extrajudicial statements made by defendants of their connection therewith could be shown upon the question of the guilt of the utterer."

As before noted, testimony as to the alleged confessions of Bonacci and Meadows would have been incompetent against the other defendants even though the *corpus delicti* had been established by competent proof. However, the commission of the crime of conspiracy to violate the statute in question here by acquiring, transporting, possessing, selling and distributing cigarettes in Michigan without obtaining a license and without paying the tax was not shown. Proof relating to the alleged confessions could not be relied on by the people for that purpose. As found by the circuit judge and as indicated by the transcript of the testimony filed in this Court, the rights of the defendants were fully safeguarded by objections of their counsel to the admission of incompetent evidence.

The situation here is analogous to that in *People* v. *White,* 276 Mich 29. There the defendants were charged with larceny, conspiracy to commit larceny, and receiving stolen property. They were convicted of the last offense. Following the preliminary examination in the case a motion to quash the information was made on the ground of an absence of competent testimony to show the *corpus delicti.* The

people were permitted to introduce, over objection as in the case at bar, statements made by defendants in answer to questions of members of the police department of the city of Flint. In holding that such testimony did not constitute proper proof that a crime had been committed, this Court said in part:

"It appears to be well-settled that the *corpus delicti* cannot alone be established by the extrajudicial confession of an accused.    *    *    *

"It is unnecessary to consider the other questions raised by this appeal. The failure of the people to sustain their charge may be unfortunate, in view of the subsequent testimony at the trial, but it would be more unfortunate to upset established and well-understood rules of law."

The language quoted is applicable to the situation presented in the case at bar. Likewise, in *People v. June,* 294 Mich 681, this Court came to the conclusion that without testimony of an alleged confession made by one of the defendants there was no proof of the *corpus delicti* and that such testimony was inadmissible since "the *corpus delicti* must be proved without the aid of the confession and before the extrajudicial confession may be proved."

Further discussion of the issues in the case is not required. The circuit judge correctly determined that there was no competent evidence taken on the examination to show that the crime charged against defendants had been committed. For that reason the order granting the motion to quash was not erroneous, and such order is affirmed.

DETHMERS, C. J., and ADAMS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.