PEOPLE v FIEDLER

Docket No. 139061. Submitted January 8, 1992, at Grand Rapids. Decided July 6, 1992, at 10:25 A.M.

Marvin E. Fiedler, a Benton Harbor police officer, was charged in the Berrien Circuit Court with involuntary manslaughter and possession of a firearm during the commission of a felony. The court, John T. Hammond, J., granted the defendant's motion to quash the information and dismissed the case. The court ruled that no crime was committed, because it found that the defendant's killing of the victim was justified under the common-law fleeing-felon rule. The people appealed.

The Court of Appeals *held:*

1. The trial court erred in determining that MCR 6.110(E), which requires that a finding of probable cause be made at a preliminary examination, conflicts with MCL 766.13; MSA 28.931, which pertains to determining whether to discharge or bind over a defendant for trial, and that the court rule was invalid.

2. The trial court erred in quashing the information on the basis of a finding that the killing was justified under the common-law fleeing-felon rule. The trial court, in finding that the defendant was justified in using deadly force, resolved conflicts in the testimony and substituted its judgment for that of the district court. Whether the use of deadly force was justified was a question for the jury.

3. The district court did not abuse its discretion in binding over the defendant for trial.

4. The circuit court correctly held that evidence of the shooting policy of the Benton Harbor Police Department was improperly admitted at the preliminary examination, but erred in ruling that the admission of the evidence required the quashing of the information. There was sufficient competent evidence to support binding over the defendant for trial. The

REFERENCES

Am Jur 2d, Criminal Law §§ 411 *et seq.*

See the Index to Annotations under Criminal Law; Criminal Procedure Rules; Preliminary Hearing; Preliminary Or Pretrial Matters; Probable Cause.

introduction of the evidence regarding the shooting policy was harmless error.

Reversed.

1. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — PROBABLE CAUSE — COURT RULES — STATUTES.

The court rule requiring that a finding of probable cause be made at a preliminary examination was not an attempt to change Michigan law and does not conflict with the statute pertaining to determining whether to discharge or bind over a defendant for trial; the court rule does not change the burden of proving whether a crime has been committed, but rather defines the applicable burden (MCR 6.110[E]; MCL 766.13; MSA 28.931).

2. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — APPEAL.

A circuit court reviewing a district court's decision to bind over a defendant for trial may not substitute its judgment for that of the district court, and may reverse only if it appears from the record that there was an abuse of discretion; the Court of Appeals reviews a circuit court's decision to quash an information by determining whether the district court abused its discretion in binding over the defendant.

3. CRIMINAL LAW — PRELIMINARY EXAMINATIONS.

The prosecution need not establish guilt beyond a reasonable doubt at a preliminary examination; however, evidence regarding each element of the crime or evidence from which the elements may be inferred must exist; where the evidence conflicts or raises a reasonable doubt concerning guilt, there are questions for the trier of fact, and the defendant should be bound over for trial.

4. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — EVIDENCE — HARMLESS ERROR.

The improper admission of evidence at a preliminary examination may be found to have been harmless error where there was sufficient competent evidence presented to support the determination to bind over the defendant for trial.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Robert Ianni,* Assistant Attorney General In Charge, Criminal Division, and *John D. Walter,* Assistant Attorney General, for the people.

*Burch, Dettman, Banyon & Bruce* (by *Andrew J.*

*Burch, Donald D. Dettman,* and *Jack E. Banyon),* for the defendant.

Before: MARILYN KELLY, P.J., and DOCTOROFF and GRIFFIN, JJ.

DOCTOROFF, J. The people appeal as of right from an order of Berrien Circuit Judge John T. Hammond quashing an information charging defendant, Benton Harbor Police Officer Marvin Fiedler, with involuntary manslaughter, MCL 750.329; MSA 28.561, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2).[1] The prosecution argues that the circuit court erred in ruling that MCR 6.110(E) is invalid, that the district court did not abuse its discretion when it bound over defendant for trial, that the fleeing-felon rule does not prohibit prosecution of defendant, that the circuit court erred in ruling that the district court erred in admitting evidence regarding the shooting policy of the Benton Harbor Police Department, and that the appropriate remedy was to remand to the district court. We reverse and reinstate the information.

This case arises out of the shooting death of Norris Maben by defendant on January 18, 1990.

According to the testimony presented at the preliminary examination, Benton Harbor Police Department Dispatcher Karen Singleton received a telephone call from an anonymous informant that Terry Jenkins had been spotted in the vicinity of 700 Pavone Street. Jenkins was wanted by the Benton Harbor Police Department on an open murder charge. The informant described Jenkins as a black male wearing a brown brimmed hat,

---

[1] The prosecution has not raised, and at oral argument expressly abandoned, any challenge of the quashing of the felony-firearm information.

black sweatpants, white tennis shoes, a blue denim jacket with a fur collar, and with braids in his hair. No information was given regarding Jenkins' height, weight, or complexion.

Singleton gave an initial report of this call to defendant in person at the police station, and then followed up with numerous radio communications with defendant as he was en route to Pavone Street. She estimated she spoke with defendant more than five times by radio during this interval.

Marie Kimble testified that she was watching television in her upstairs apartment at 755 Pavone Street when an acquaintance of hers, Sam Buchanan, knocked at her door and asked to use her telephone. Buchanan was accompanied by a black male whom she did not know, but who was later identified as Norris Maben. Maben was wearing a blue brimmed hat, two coats, one black and one blue, blue sweatpants, and blue tennis shoes. Shortly thereafter, Kimble admitted defendant after he knocked and requested entry. Defendant asked Buchanan for identification, and Buchanan said he did not have any. Buchanan also told defendant that nobody came in with him. Meanwhile, Maben, who was in an adjoining room outside defendant's vision, said to Kimble, "You ain't seen me," but she responded that she would not hide anyone, whereupon Buchanan walked into an adjacent bedroom and Maben entered the kitchen, where defendant was standing. Defendant asked for identification and Maben responded that he did not have any and, when asked his name, replied "Norris Maben." As defendant extended his hand toward Maben, Maben ran from the kitchen, through the living room, and back to a bedroom, where he leaped outside through the glass of a closed window. Neither Kimble nor defendant witnessed the actual leap because the

window through which Maben jumped was outside their vision from the kitchen. Kimble testified that there had been no body contact between defendant and Maben.

Defendant followed Maben's path through the apartment and outside Kimble's vision, after which she heard defendant yell "halt" three times, then heard three rapid shots, after which defendant came back through the kitchen and went downstairs and into the back yard. When she went to the rear of her apartment and looked outside, she saw Maben lying face down on the ground in the back yard. Kimble testified that defendant never told the occupants of the apartment why he was there or for whom he was looking, never arrested or charged them with a crime, and never drew his handgun while in her presence.

The pathologist who performed the autopsy testified that a single bullet entered the left front area of Mayben's chest and came out his lower back. Laboratory tests indicated the presence of a small amount of cocaine and suggested the presence of marijuana in Maben's body.

Officers who investigated the shooting testified that no weapons were found near the body. A set of keys was found under Maben's right arm. Defendant told one officer at the scene that he thought Maben was Jenkins, but was wrong.

The defense called as its sole witness Lt. Gary Ruhl, a Berrien County deputy sheriff, who took a statement from defendant on January 25, 1990. According to defendant's statement, Karen Singleton informed him that Jenkins had been spotted on Pavone Street. He proceeded to Pavone Street and, as he was driving, saw two men come around the front corner of the house at 755 Pavone Street. The shorter of the two men was wearing a small-brim hat and dark clothing, which defendant felt

fit the description he had been given. The men went up on the porch. Defendant looked away and, when he turned back around, the men were gone.

Defendant knocked at the door of the house and a child, who admitted him, stated in response to defendant's inquiry that two men had gone upstairs. Defendant went upstairs, knocked at the door of the upper apartment, and was informed by the woman who opened it that there was no one else on the premises. When informed that a child downstairs had indicated that two men entered the apartment, the taller man came out and stated to defendant that he was the only man there. However, defendant inquired regarding the man with the small-brimmed hat. At that point, Maben entered the kitchen from another room and, in response to defendant's questions, stated his name was Maben and denied having any identification on him. Defendant reached for Maben's coat pocket to see if he had a wallet, but Maben pushed defendant to the point that defendant was completely off balance. Maben then ran out of the room and dove through the window. Defendant went to the window, saw Maben go off the edge of the roof of a lower part of the building and run diagonally across the back yard toward an alley, and, while standing at the window, ordered him to halt. Maben then turned around and moved as if reaching for something at his hip, whereupon defendant drew his handgun and fired three quick shots at Maben. Defendant believed that Maben was, in fact, Jenkins and thought he was reaching for a weapon.

Defendant stated he did not hear Maben tell Kimble to say that Maben was not there and did not recall receiving additional details regarding Jenkins' description while en route to Pavone Street.

The examining magistrate bound over defendant to circuit court for trial, stating that "the evidence exists to find that probable cause exists that both of the offenses charged which are not cognizable by this court have been committed and that the Defendant committed the same."

The circuit court granted defendant's motion to quash the information by written opinion entered on December 26, 1990, on the ground that the magistrate never found that a crime was committed, as required by MCL 766.13; MSA 28.931. The court also noted that in *People v Couch,* 436 Mich 414; 461 NW2d 683 (1990), the Michigan Supreme Court held that the common-law fleeing-felon rule was still in force in Michigan and that the magistrate did not have the benefit of the *Couch* opinion.

In a supplemental opinion issued on January 2, 1991, and in an opinion filed on February 25, 1991, which denied the prosecution's motions to disqualify the circuit judge, to remand, and to reconsider, the circuit court elaborated on its reasons for granting the motion to quash. The circuit court ruled that admission of evidence of the shooting policy of the Benton Harbor Police Department was error and that the magistrate had utilized an improper standard of proof by finding probable cause to believe the offenses charged were committed. The circuit court found that MCR 6.110(E) conflicts with MCL 766.13; MSA 28.931, and that the statute was controlling. The circuit court also found, after reviewing the evidence presented at the preliminary examination and considering defendant's fleeing-felon rule defense, that no crime was committed.

The people's first argument on appeal is that the trial court erred in ruling that MCR 6.110(E) is invalid because it attempts to effect a substantive

change in Michigan law by authorizing binding over a defendant upon the examining magistrate's finding of probable cause to believe the crime charged has been committed.

Section 13 of the preliminary examination statute, MCL 766.13; MSA 28.931, states:

> If it shall appear to the magistrate at the conclusion of the preliminary examination either that an offense has not been committed or that there is not probable cause for charging the defendant therewith, he shall discharge such defendant. If it shall appear to the magistrate at the conclusion of the preliminary examination that a felony has been committed and there is probable cause for charging the defendant therewith, the magistrate shall forthwith bind the defendant to appear before the circuit court of such county, or other county having jurisdiction of the cause, for trial.

MCR 6.110(E) provides, in relevant part:

> If, after considering the evidence, the court determines that probable cause exists to believe both that an offense not cognizable by the district court has been committed and that the defendant committed it, the court must bind the defendant over for trial.

The trial court found that there is a conflict between the statute and the court rule, in that the court rule attempted to change substantive law and, therefore, that the court rule is invalid.

We must first determine whether the statute and court rule conflict. In other words, does the court rule attempt to effectuate a change in Michigan law.

Although the language of the statute and the court rule differ, we hold that MCR 6.110(E) does

not attempt to change Michigan law and does not conflict with MCL 766.13; MSA 28.931.

The statute does not define the burden of proof applicable to the determination whether a crime has been committed. We recognize that the Michigan Supreme Court, in dicta, has indicated that a defendant should not be bound over if the prosecution merely proved that there was probable cause to believe the crime charged was committed. See *People v Paille #2,* 383 Mich 621, 628; 178 NW2d 465 (1970); *People v Asta,* 337 Mich 590, 609-610; 60 NW2d 472 (1953); *People v Matthews,* 289 Mich 440, 444; 286 NW 675 (1939). That two of these three cases are cited in the committee commentary to the proposed court rule indicates that the Supreme Court was aware of them at the time the court rule was proposed and promulgated. The court rule and the commentary are the clearest indicator of the Supreme Court's current view regarding this issue.

Const 1963, art 6, § 5 grants the Supreme Court authority to establish general rules regulating practice and procedure in the courts of this state. The staff comments regarding MCR 6.110(E) state:

> Subrules (E) and (F) implement MCL 766.13; MSA 28.931. Although the language the rules use in describing the bind-over and discharge standards is different than that used in the statute, no substantive difference is intended. The other provisions in these subrules are also consistent with existing law.

The language of MCR 6.110(E) was originally proposed as MCR 6.107(E). 422A Mich 27 (1985) (advance sheets only). The committee note commentary that follows the proposed rule is most enlightening:

Subrule (E). This subrule imposes the traditional probable cause requirement for a bindover decision. MCL 766.13; MSA 28.931, however, states that the defendant should be bound over if it appears "that a felony has been committed and there is probable cause for charging the defendant therewith. . . ." Taken literally, this might imply that the judge must be certain that an offense has been committed, although no court has suggested such a standard. A number of cases have suggested, however, that the standard of cause pertaining to the crime is higher than that pertaining to the defendant's connection with the crime. *People v King,* 412 Mich 145, 152-153; 312 NW2d 629 (1981); *People v Doss,* 406 Mich 90, 100-101; 276 NW2d 9 (1979); *People v Asta,* 337 Mich 590, 609-610; 60 NW2d 472 (1953). No case has attempted to define this "higher" standard.

Arguably the cases have misread the statute. MCL 766.13; MSA 28.931 uses the same formulation for the discharge rule that it uses for the bindover rule. "If it shall appear to the magistrate . . . either that an offense has not been committed or that there is not probable cause for charging the defendant therewith, he shall discharge such defendant." No one interprets this to require that a judge find as a fact that a crime was not committed before he or she can discharge a defendant. Yet some have read the same words in the bindover standard as requiring the judge to find as a fact that a crime was committed before he or she can bind the defendant over for trial.

In any event, all fact finding is subject to some burden of persuasion, but neither the statute nor the cases define that burden with respect to the crime. The subrule reflects the belief that probable cause is the appropriate burden. Certainly no one would require proof beyond a reasonable doubt at the preliminary examination. Clear and convincing evidence likewise is too high a burden for a screening procedure to employ. Standards below this come so close to the probable cause formulation that to attempt distinctions is to split hairs

without appreciably furthering the interests of either party.

The subrule's formulation is consistent with FR Crim P 5.1(a) and with the great weight of state authority. Over 30 states require probable cause as to both the offense and the defendant. Approximately thirteen states have provisions similar to MCL 766.13; MSA 931 [sic]. Even in these states, however, it is not clear that the provisions are strictly construed. For example, in *Drury v Burr,* 107 Ariz 124, 125; 483 P2d 539 (1971), the Arizona Supreme Court interpreted such a provision as requiring only that "a person of ordinary caution or prudence conscientiously . . . entertain a *reasonable suspicion* that a public offense has been committed . . . ." (Emphasis added.) (Subsequently, Arizona adopted a rule, like subrule (E), requiring "probable cause to believe that an offense has been committed and that the defendant committed it. . . ." Ariz R Crim P 5.4[a].). [422A Mich 32-33.]

The staff comments regarding MCR 6.110(E) and the committee commentary regarding proposed MCR 6.107(E) clearly indicate that MCR 6.110(E), although its language differs from the language of MCL 766.13; MSA 28.931, does not attempt to change the burden of proof applicable to the determination whether a crime has been committed, but rather defines the applicable burden. We perceive no conflict between the statute and the court rule. The circuit court erred in ruling that a conflict exists.

The people's second and third arguments are interrelated. The second argument is that the district court did not abuse its discretion when it bound over defendant for trial. The third argument is that the fleeing-felon rule did not prohibit prosecution of defendant.

In reviewing a district court's decision to bind

over a defendant, a circuit court should not substitute its judgment for that of the district court and may reverse only if it appears from the record that there was an abuse of discretion. *People v Lopez,* 187 Mich App 305, 308; 466 NW2d 397 (1991). On review of a circuit court's decision to quash an information, this Court must determine whether the district court abused its discretion in binding over the defendant. *Id.* At the preliminary examination, the prosecution need not establish guilt beyond a reasonable doubt. *People v Hill,* 433 Mich 464, 469; 446 NW2d 140 (1989). However, evidence regarding each element of the crime or evidence from which the elements may be inferred must exist. *Id.* When the evidence conflicts or raises a reasonable doubt concerning guilt, there are questions for the trier of fact, and the defendant should be bound over. *Id.; People v Cotton,* 191 Mich App 377, 384; 478 NW2d 681 (1991).

The elements of involuntary manslaughter, as applied to the facts of this case, are (1) that the defendant caused the death of Maben, (2) that the death resulted from the discharge of a firearm, (3) that, at the time the firearm was fired, defendant was pointing it at Maben, (4) that, at that time, defendant intended to point the firearm at Maben, and (5) that defendant caused Maben's death without lawful excuse or justification. CJI2d 16.11.

The circuit court ruled that no crime was committed, because it found that defendant's killing of Maben was justified under the common-law fleeing-felon rule.

In *People v Whitty,* 96 Mich App 403, 411; 292 NW2d 214 (1980), this Court pointed out that, under the common law, the use of deadly force in making an arrest can be divided into two categories: (1) the use of deadly force when the arresting person is met with force from the party to be

arrested, and (2) the use of deadly force when necessary to prevent the person being arrested from fleeing. The Court further stated:

> It also appears that the common law imposed a further distinction between police officers and private persons when the matter escalated beyond the issue of making the arrest to the question of when deadly force could be used to make the arrest. While a private citizen could arrest a person who was *suspected* of committing a felony that *in fact* occurred, deadly force was justified only if the felony actually occurred and the person against whom the force was used was in fact the person who committed the felony. A police officer was justified in acting on the basis of reasonable belief at both levels of inquiry. [*Id.,* p 411. Citation omitted. Emphasis in original.]

In determining that defendant's killing of Maben was justified under the common-law fleeing-felon rule, the circuit court found that defendant reasonably believed that Maben was Jenkins and that defendant was justified in using deadly force against Maben. In so doing, the circuit court resolved conflicts in the testimony and substituted its judgment for that of the district court. Whether defendant was justified in believing that Maben was Jenkins and in using deadly force against Maben is a question for the trier of fact. Accordingly, we hold that the circuit court erred in granting defendant's motion to quash the information. Considering the evidence presented at the preliminary examination, the district court did not abuse its discretion in binding over defendant for trial.

Plaintiff's fourth argument is that the circuit court erred in ruling that the district court erred in admitting evidence of the shooting policy of the Benton Harbor Police Department.

In *Washington v Starke,* 173 Mich App 230; 433 NW2d 834 (1988), this Court held that evidence of the shooting policy of the Benton Harbor Police Department was inadmissible because it could not supersede the Michigan common-law fleeing-felon rule. Although *Washington* was a civil case, its holding is equally applicable to a criminal case. Therefore, the circuit court correctly held that evidence of the shooting policy of the Benton Harbor Police Department was improperly admitted at the preliminary examination. However, the circuit court erred in ruling that admission of the evidence required that the information be quashed. The introduction of incompetent evidence at the preliminary examination can be harmless error. *People v Hall,* 435 Mich 599; 460 NW2d 520 (1990); *People v Usher,* 121 Mich App 345, 349; 328 NW2d 628 (1982). There was sufficient competent evidence presented to support binding over defendant for trial.

The prosecution's final argument is that, because the circuit court quashed the information on the basis of the technical and procedural errors it concluded were committed by the district court, the appropriate remedy was to remand to the district court. Having determined that the circuit court erred in quashing the information, discussion of this issue is unnecessary.

Reversed.